IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOHNNY THOMAS, A BANKRUPTCY TRUSTEE OF PERFORMANCE PRODUCTS, INC.; AND CAROLYN PEARCY, IN HER CAPACITY AS TRUSTEE OF THE PEARCY FAMILY TRUST, TRUSTEE OF THE PEARCY MARITAL TRUST, AND EXECUTOR OF THE ESTATE OF JAMES PEARCY; | § § § § § § § § § | SA-16-CV-00951-DAE |
| *Plaintiffs,* | § § | |
| vs. | § § | |
| LOU ANN HUGHES,  ADVANCED PROBIOTICS, LLC,  PERFORMANCE PROBIOTICS, LLC, | § § § § § | |
| *Defendants.* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation concerns Plaintiff's Motion for Entry of Final Judgment [#175].[1]  The motion was referred to the undersigned for disposition after a jury trial resulting in a jury verdict in favor of Plaintiffs.  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, it is recommended that Plaintiffs' motion be granted in part as follows.

---

[1] The District Court has also referred two other post-trial motions:  Plaintiffs' Motion for Award of Attorney's Fees [#174] and Plaintiff's Application for Post Judgment Turnover and Appointment of Receiver [#183].  The undersigned will address these motions by separate report and recommendation.

## I.  Background

This case arises out of a business dispute regarding Performance Products, Inc. ("PPI"), a company that developed and sold probiotic feed supplements for cattle and other livestock. (Third Am. Compl. [#35-1] at ¶ 9.)  Plaintiff James Pearcy, founder of PPI, along with Johnny Thomas, Bankruptcy Trustee of PPI, originally filed this suit against Defendants Lou Ann Hughes, Pearcy's former attorney, and two entities she created—Advanced Probiotics, LLC ("APL") and Performance Probiotics, LLC ("Performance Probiotics").  During the pendency of this case, Pearcy died and his wife Carolyn Pearcy, in her capacities as Trustee of the Pearcy Marital Trust and Executor of her husband's estate ("Executor"), was substituted as a party plaintiff [#65, #69].

Plaintiffs' Third Amended Complaint alleges that Pearcy developed proprietary formulations for PPI's probiotic feed supplements and ultimately sold his company to Defendant Hughes.  (Third Am. Compl. [#35-1] at ¶ 9.)  Hughes structured the transaction such that she paid a small portion of the purchase price in exchange for PPI stock, with the remainder of the price to be paid by PPI under a licensing agreement whereby PPI could continue to use the proprietary formulations in exchange for PPI paying Pearcy royalties.  (*Id.*)

Plaintiffs contend that Hughes failed to pay the royalties owed, which resulted in a state court lawsuit brought by Pearcy against PPI for breach of contract and misappropriation of trade secrets and against Hughes for breach of fiduciary duties.  (*Id.* at ¶ 10.)  After a ten-day trial, the state-court jury returned a verdict for Pearcy finding that PPI did not comply with the licensing agreement; PPI misappropriated Pearcy's trade secrets; and Hughes breached her fiduciary duty to Pearcy as his attorney.  (*Id.*)  However, the state court granted PPI's motion to set a supersedeas bond at $129,816.54, which prevented Pearcy from collecting on the judgment or

conducting post-judgment recovery during PPI's and Hughes's appeals. (*Id.* at ¶ 11.) The Third Court of Appeals affirmed the judgment; the Texas Supreme Court denied a petition of review; Pearcy received the supersedeas bond; but PPI did not pay the remainder. (*Id.* at ¶ 13.) Hughes subsequently filed for bankruptcy protection for PPI, and Plaintiffs filed this action to recover the $1,265,250.23 remaining on the judgment.

By this action, Plaintiffs allege that Hughes and her entities APL and Performance Probiotics continued to use Pearcy's misappropriated trade secrets and have improperly insulated themselves from compensating Pearcy for same and fulfilling the state court judgment. (*Id.* at ¶¶ 12, 14.) The following claims survived Defendants' motion for summary judgment: (1) Plaintiffs' state law fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA"); (2) Plaintiffs' piercing the corporate veil and disregard of the corporate entity claim; (3) the Executor's misappropriation of trade secrets claim; (4) the Trustee's federal fraudulent transfer claims under 11 U.S.C. §§ 542, 544, and 548; and (5) the Trustee's Lanham Act claims for trademark infringement. (Summ. J. Order [#108] at 53.)

From October 28, 2019 to November 5, 2019, the District Court held a jury trial on these claims. At the close of trial, the jury returned a verdict for Plaintiffs, finding the following: (1) Hughes fraudulently transferred assets of PPI with the intent to hinder, delay, or defraud Pearcy and the assets were not of inconsequential value; (2) Hughes used PPI and Performance Probiotics for the purpose of perpetrating an actual fraud on Pearcy for her own personal benefit; (3) Hughes and Performance Probiotics misappropriated Pearcy's trade secrets, resulting in damages of $1,419,724.37 and assessing $1.2 million in punitive damages against Hughes; and (4) Hughes breached her fiduciary duty to PPI, resulting in $859,490 in compensation that should

be disgorged and returned to the Trustee.  Plaintiffs now move for entry of final judgment based on this verdict, as well as post-judgment interest and court costs.

## II.  Analysis

Defendants oppose entry of Plaintiffs' proposed final judgment on the basis that (1) Plaintiffs' proposed final judgment fails to resolve all pending claims; (2) the Court not the jury should decide whether to award damages for Plaintiffs' breach of fiduciary duty claim; and (3) Plaintiffs' claim the incorrect rate for post-judgment interest.

**A.     Plaintiffs' proposed amended final judgment resolves all pending claims.**

As to their first argument, Defendants, invoking Rule 54 of the Federal Rules of Civil Procedure, contend that Plaintiffs' proposed final judgment fails to address claims asserted against API, fails to address pleadings for turnover under 11 U.S.C. § 542, and does not seek the appointment of a receiver as set forth in the pleadings.  Plaintiffs respond that the Court should retain jurisdiction as to API solely for the purpose of enforcing its judgment and that turnover relief and receivership are post-judgment remedies that need not be addressed in the final judgment.  Plaintiffs submit to the Court a modified proposed final judgment addressing the issue of jurisdiction over API.  (Am. Proposed Final J. [#181-1].)

The undersigned finds that Plaintiffs' modifications to their proposed final judgment sufficiently address the issues raised by Defendants.  Under Rule 54, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b).  The amended proposed final judgment provides that "no relief is granted against Advanced Probiotics International, LLC" but the Court

"retains jurisdiction over Advanced Probiotics International, LLC as a party to this lawsuit and an entity owned by Lou Ann Hughes to grant relief for the enforcement and collection of the relief granted herein should any assets of Performance Probiotics, Inc., Performance Probiotics, LLC, or Lou Ann Hughes be transferred to Advanced Probiotics International, LLC." (*Id.* at ¶ 9.)

The record reflects that the verdict form used in this case did not ask the jury any questions regarding the liability of API, and instead focused solely on the conduct of Performance Products, Inc. and Performance Products, LLC. Plaintiffs maintain that the evidence at trial established that API is wholly owned by Hughes but presently has no assets and does no business. Yet the District Court denied Defendants' oral motion for judgment as a matter of law with regard to API at the close of trial. Plaintiffs contend the motion was denied on the basis that Hughes had demonstrated a willingness to fraudulently transfer assets to new entities to prevent collection of a judgment. Plaintiffs maintain that on this basis the Court should retain jurisdiction over API in the event that granting post-judgment relief to enforce the Court's judgment is necessary to avoid any fraudulent transfers to this entity. The undersigned agrees. Accordingly, the final judgment disposes of Plaintiffs' claims against API, awarding no relief with respect to this Defendant, thereby complying with Rule 54(b), but retains jurisdiction over all parties for purposes of post-judgment enforcement. As Defendants point out in their response, the retention of jurisdiction for purposes of the enforcement and satisfaction of judgment is implicit. *See Berry v. McLemore*, 795 F.2d 452, 455 (5th Cir. 1986) ("It is black letter law that: 'the jurisdiction of a court is not exhausted by the rendition of judgment, but continues until that judgment is satisfied.'") (quoting *Riggs v. Johnson Cnty.*, 73 U.S. 166 (1868)).

As to the requested turnover relief and receivership, the undersigned agrees with Plaintiffs that these are post-judgment remedies for the enforcement of the Court's judgment and need not be included in the final judgment itself, despite the inclusion of this equitable relief in Plaintiff's pleadings. (*See* Third Am. Compl. [#73] at ¶¶ 39, 49) (pleading the turnover of property and assets of PPI pursuant to 11 U.S.C. § 542 and appointment of a receiver for Performance Probiotics for the purpose of satisfying Pearcy's judgment). Defendants themselves argue that Plaintiffs' separately-filed motion for post-judgment turnover and appointment of receiver is premature as no judgment has yet been entered in this matter, and upon entry the judgment will be automatically stayed for 30 days, during which Defendants will be entitled to seek an extension of the stay pending appeal. (Resp. [#186] at 2.) Conversely, if Defendants pay the Court's judgment, there will be no need for the requested post-judgment turnover or receivership.

**B.    The Court should undertake its own independent inquiry as to whether to award Plaintiffs equitable relief for Hughes's breach of fiduciary duty.**

Plaintiffs' proposed final judgment orders that Plaintiff Johnny Thomas, as Trustee of Performance Productions, Inc., shall recover from Lou Ann Hughes the amount of $859,490.00 in compensation for Hughes's breach of fiduciary duty. (Am. Proposed Final J. [#181-1] at ¶ 3.) This amount corresponds with the jury's finding that $859,490.00 is the sum of money that "would fairly and reasonably compensate Performance Products, Inc. for its damages" for Hughes's breach of fiduciary duty. Defendants oppose this portion of the proposed final judgment, arguing that a jury may properly determine whether a fiduciary duty exists and whether it has been breached (as the jury did here), but the Court, not the jury, must determine whether to fashion equitable relief in the form of fee forfeiture or profit disgorgement to remedy the breach. Defendants further contend there is no basis in the evidence for requiring Hughes to

forfeit her entire compensation for her services operating Performance Probiotics, Inc. (which Defendants contend is equivalent to the $859,490.00 awarded by the jury) as remedy for her breach. Defendants ask the Court to independently determine the appropriate equitable relief with respect to Plaintiffs' breach of fiduciary duty claim.

According to the Texas Supreme Court, both profit disgorgement and fee forfeiture, as opposed to actual damages, are equitable remedies a court may fashion to remedy a breach of fiduciary duty. *ERI Consulting Engineers, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010). The central purpose of fee forfeiture (*e.g.*, the return of compensation for performed services or return of contractual consideration) is not the compensation of the injured principal, though it may have that effect; rather, it is to remedy a breach of fiduciary duty or violation of trust by discouraging the disloyalty of the agent. *See id.*; *Dernick Res., Inc. v. Wilstein*, No. 01-13-00853-CV, 2014 WL 4088150, at *4 (Tex. App.—Houston [1st Dist.] Aug. 19, 2014, no pet.) (citing *Burrow v. Arce*, 997 S.W.2d 229, 245 (Tex. 1999)). "Thus, depending on the circumstances, fee forfeiture can serve two purposes: (1) to serve as restitution to a principal who did not receive the benefit of the bargain due to his agent's breach of fiduciary duties, and (2) to deter an agent from breaching fiduciary duties to clients." *Dernick Res., Inc.*, 2014 WL 4088150, at *4 (citing *Burrow*, 997 S.W.2d at 237–38). Courts may also "disgorge all ill-gotten profits from a fiduciary when a fiduciary agent usurps an opportunity properly belonging to a principal, or competes with a principal." *Swinnea*, 318 S.W.3d at 873. A party seeking forfeiture or disgorgement does not need to prove actual damages in order to be entitled to the remedy. *See Burrow*, 997 S.W.3d at 239–40 & nn. 35–37.

Regardless of how the equitable relief is characterized, the remedy must fit the circumstances presented. *Id.* at 241. In *Burrow*, the Texas Supreme Court listed several factors

7

for consideration when fashioning a particular equitable forfeiture remedy in the context of attorney-client relationships: "[T]he gravity and timing of the violation, its wilfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies." *Id.* at 243–44 (quoting Restatement (Third) of the Law Governing Lawyers § 49 (Proposed Final Draft No. 1, 1996)). "These factors are to be considered in determining whether a violation is clear and serious, whether forfeiture of any fee should be required, and if so, what amount." *Id.* at 243. The list is not exclusive. *Id.* "Even though the main purpose of the remedy is not to compensate the client, if other remedies do not afford the client full compensation for his damages, forfeiture may be considered for that purpose." *Id.* at 244. A court also has discretion to determine whether one who has committed a breach of trust "shall receive full compensation or whether his compensation shall be reduced or denied." *Id.* at 243 (quoting Restatement (Second) of Trusts § 243, cmt. c). In making this determination, a court should consider: (1) whether the trustee acted in good faith or not; (2) whether the breach of trust was intentional or negligent or without fault; (3) whether the breach of trust related to the management of the whole trust or related only to a part of the trust property; (4) whether or not the breach of trust occasioned any loss and whether if there has been a loss it has been made good by the trustee; (5) whether the trustee's services were of value to the trust. *Swinnea*, at 874–75.

Here, Defendants contend the proposed judgment ignores these standards and instead allows the jury to determine the amount of "damages" to compensate Plaintiffs for Hughes's breach. It is not clear, however, from Defendants' briefing whether they are also arguing that it was error for the Court to submit a question on damages to the jury in the first instance. The undersigned notes that Defendants themselves requested that the jury be instructed to determine

8

damages and did not object to the Court's charge as submitted. Texas Pattern Jury Charges 115.15 and 115.16 cover remedies for breach of fiduciary duty. Charge 115.15 summarizes the law discussed *supra*—that whether equitable relief should be granted is a question for the court to decide based on the equity of the circumstances; however, the jury must resolve any contested fact issues. "Fact disputes for the jury to decide may include the existence of a breach, the agent's culpability, the value of the agent's services, the amount of contractual consideration paid, and the existence and amount of any harm to the principal." Tex. Pattern Jury Charge 115.15.

Disgorgement of profits is one example provided for in the Texas Pattern Charge. "A fiduciary must account for, and yield to the beneficiary, any profit that he makes as a result of a breach of his fiduciary duty." Tex. Pattern Jury Charge 115.16 (citing *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576–77 (Tex. 1963); Restatement (Third) of Agency §§ 8.01 cmt. d(1), 8.02 (2006)). Whether to order the disgorgement of profits "does not present a jury question." Tex. Pattern Jury Charge 115.16. If the amount of profit is disputed, however, the Texas Pattern Jury Charge instructs courts to submit this fact question to the jury, using Pattern 115.16, which states: "What was the amount of [the defendant's] profit in [the transaction in question]?" Tex. Pattern Jury Charge 115.16. "The court will then decide whether the breach was clear and serious and whether the remedy would be equitable and just." Tex. Pattern Jury Charge 115.15 (citing *Burrow*, 997 S.W.2d at 245–46).

Plaintiffs now argue that the question submitted to the jury regarding Plaintiffs' damages for Hughes's breach of fiduciary duty was a fact question related to profit disgorgement. Question 19 of the jury charge directed the jury to consider the following elements of damages in determining how to compensate PPI for damages caused by Hughes's breach: "Compensation

9

received as a result of the breach of [Hughes's] fiduciary duty." Insofar as the Court's question to the jury was attempting to resolve a fact question related to the amount of profit or compensation Hughes received due to her breach of her fiduciary duty, the submission of this question to the jury was not legal error.

However, the undersigned agrees with Defendants that ***whether*** to award equitable relief to Plaintiffs based on Hughes's breach and ***how*** to fashion that equitable relief are questions for the Court to decide. The Court certainly may consider the jury's determination that Hughes received $859,490.00 in compensation alongside its evaluation of the non-exclusive list of factors provided by the Texas Supreme Court in *Burrows* and *Swinnea* for awarding equitable relief. *See Burrow*, 997 S.W.3d at 243–44; *Swinnea*, 318 S.W.3d at 874–75. The undersigned therefore recommends that the District Court evaluate the evidence submitted at trial[2] in light of the factors outlined by the Texas Supreme Court as discussed herein, and in its discretion may also consider the jury finding as to Hughes's compensation, in determining whether to award equitable relief in the form of fee forfeiture or disgorgement of profits, and if so, in what amount.

C.      **Post-judgment interest should be calculated at the rate established under federal law.**

Defendants argue that Plaintiffs' proposed final judgment includes the incorrect rate for calculating post-judgment interest. In their reply, Plaintiffs concede they mistakenly applied the state-law provision but now agree that post-judgment interest should be awarded in accordance with 28 U.S.C. § 1961, which directs courts to calculate interest at the rate published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the

---

[2] As the undersigned was not the trier of fact, she is not in a position to evaluate and weigh the trial evidence, only to recommend a disposition of the questions of law presented in the parties' briefing.

judgment.  28 U.S.C. § 1961(a).  Plaintiffs' amended proposed final judgment [#181-1] reflects this change.

### III.  Conclusion and Recommendation

Having considered Plaintiffs' motion, the response and reply thereto, the record in this case, and the governing law, the undersigned recommends that Plaintiff's Motion for Entry of Final Judgment [#175] should be **GRANTED IN PART** as follows:  The District Court should adopt Plaintiffs' Amended Proposed Final Judgment [#181-1] except that (1) the Court should independently determine, consistent with the standards set forth in this opinion, whether Plaintiffs are entitled to equitable relief in the form of fee forfeiture or disgorgement of profits due to Hughes's breach of fiduciary duty, and if so, in what amount; and (2) the Court should award post-judgment interest consistent with federal, not Texas, law.

### IV.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party

from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 18th day of February, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE