IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JOHNNY THOMAS, A BANKRUPTCY TRUSTEE OF PERFORMANCE PRODUCTS, INC.; JAMES PEARCY, CAROLYN PEARCY, IN HER CAPACITY AS TRUSTEE OF THE PEARCY FAMILY TRUST, TRUSTEE OF THE PEARCY MARITAL TRUST, AND EXECUTOR OF THE ESTATE OF JAMES PEARCY;<br><br>*Plaintiffs,*<br><br>vs.<br><br>LOU ANN HUGHES, ADVANCED PROBIOTICS, LLC, PERFORMANCE PROBIOTICS, LLC,<br><br>*Defendants.* | SA-16-CV-00951-DAE |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation concerns Plaintiffs' Motion for Award of Attorney's Fees [#174]. The motion was referred to the undersigned for a report and recommendation pursuant to Western District of Texas Local Rule CV-72 and Appendix C. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Plaintiffs' motion be granted in part.

**I.  Background**

This case arises out of a business dispute regarding Performance Products, Inc. ("PPI"), a company that developed and sold probiotic feed supplements for cattle and other livestock. (Third Am. Compl. [#35-1] at ¶ 9.)  Plaintiff James Pearcy, founder of PPI, along with Johnny Thomas, Bankruptcy Trustee of PPI, originally filed this suit against Defendants Lou Ann

1

Hughes, Pearcy's former attorney, and two entities she created—Advanced Probiotics International, LLC ("API") and Performance Probiotics, LLC ("Performance Probiotics"). During the pendency of this case, Pearcy died and his wife Carolyn Pearcy, in her capacities as Trustee of the Pearcy Marital Trust and Executor of her husband's estate, was substituted as a party plaintiff [#65, #69].

Plaintiffs' Third Amended Complaint alleges that Pearcy developed proprietary formulations for PPI's probiotic feed supplements and ultimately sold his company to Defendant Hughes. (Third Am. Compl. [#35-1] at ¶ 9.) Hughes structured the transaction such that she paid a small portion of the purchase price in exchange for PPI stock, with the remainder of the price to be paid by PPI under a licensing agreement whereby PPI could continue to use the proprietary formulations in exchange for PPI paying Pearcy royalties. (*Id.*)

Plaintiffs contend that Hughes failed to pay the royalties owed, which resulted in a state court lawsuit brought by Pearcy against PPI for breach of contract and misappropriation of trade secrets and against Hughes for breach of fiduciary duties. (*Id.* at ¶ 10.) After a ten-day trial, the state-court jury returned a verdict for Pearcy finding that PPI did not comply with the licensing agreement; PPI misappropriated Pearcy's trade secrets; and Hughes breached her fiduciary duty to Pearcy as his attorney. (*Id.*) However, the state court granted PPI's motion to set a supersedeas bond at $129,816.54, which prevented Pearcy from collecting on the judgment or conducting post-judgment recovery during PPI's and Hughes's appeals. (*Id.* at ¶ 11.) The Third Court of Appeals affirmed the judgment; the Texas Supreme Court denied a petition of review; Pearcy received the supersedeas bond; but PPI did not pay the remainder. (*Id.* at ¶ 13.) Hughes subsequently filed for bankruptcy protection for PPI, and Plaintiffs filed this action to recover the $1,265,250.23 remaining on the judgment.

By this action, Plaintiffs allege that Hughes and her entities APL and Performance Probiotics continued to use Pearcy's misappropriated trade secrets and have improperly insulated themselves from compensating Pearcy for same and fulfilling the state court judgment. (*Id.* at ¶¶ 12, 14.)  The following claims survived Defendants' motion for summary judgment:  (1) Plaintiffs' state law fraudulent transfer claims under the Texas Uniform Fraudulent Transfer Act ("TUFTA"); (2) Plaintiffs' piercing the corporate veil and disregard of the corporate entity claim; (3) the Executor's misappropriation of trade secrets claim; (4) the Trustee's federal fraudulent transfer claims under 11 U.S.C. §§ 542, 544, and 548; and (5) the Trustee's Lanham Act claims for trademark infringement. (Summ. J. Order [#108] at 53.)

From October 28, 2019 to November 5, 2019, the District Court held a jury trial on these claims.  At the close of trial, the jury returned a verdict for Plaintiffs, finding the following:  (1) Hughes fraudulently transferred assets of PPI with the intent to hinder, delay, or defraud Pearcy and the assets were not of inconsequential value; (2) Hughes used PPI and Performance Probiotics for the purpose of perpetrating an actual fraud on Pearcy for her own personal benefit; (3) Hughes and Performance Probiotics misappropriated Pearcy's trade secrets, resulting in damages of $1,419,724.37 and assessing $1.2 million in punitive damages against Hughes; and (4) Hughes breached her fiduciary duty to PPI, resulting in $859,490 in compensation that should be disgorged and returned to the Trustee.

Plaintiffs subsequently filed the motion for attorney's fees that is the subject of this report and recommendation and moved for entry of final judgment based on the verdict.  The District Court referred both motions to the undersigned for a report and recommendation. The undersigned issued a report and recommendation on the motion for judgment, and the District

Court entered a final judgment consistent with the undersigned's recommendations on March 4, 2020 [#189].

The final judgment ordered, adjudged, and decreed that Plaintiff Carolyn Pearcy, in her capacities as Trustee of the Pearcy Marital Trust and Executor of the Estate of James Pearcy, recover on her claim for misappropriation of trade secrets from PPI and Hughes, jointly and severally, the amount of $1,419,724.37, plus $188.89 in interest, accruing each day between the date of verdict and the date of judgment, for a total amount of $1,442,580.06.  The District Court also awarded Pearcy exemplary damages from Hughes on her misappropriation of trade secrets claim in the amount of $1,200,000.00.  As to the claim of breach of fiduciary duty, the District Court ordered Thomas, as Bankruptcy Trustee of PPI, to recover from Hughes the amount of $859,490.00.  The District Court specifically found that the acts of Hughes constituted various fraudulent acts taken for her own direct and personal benefit and that the corporate veil between PPI, Hughes, and Performance Probiotics should be disregarded.  The District Court also ordered that Plaintiffs shall recover from PPI and Hughes, jointly and severally, reasonable and necessary attorney's fees, expenses, and court costs to be determined by the Court.  No relief was awarded against API.  Finally, the District Court entered a permanent injunction prohibiting Hughes and PPI, or anyone acting in concert with them, from manufacturing or selling any products utilizing, incorporating, or derived from the formula listings set forth in Plaintiffs' Exhibit 33, to remain in effect so long as the damages, interest, and any fee award by the Court remain unsatisfied.

After the Court issued its final judgment, Plaintiffs filed an amended application for post-judgment turnover and appointment of a receiver, which the District Court also referred for a report and recommendation.  In addition, Defendants filed a renewed motion for judgment as a matter of law and motion for new trial, which has not been referred to the undersigned.

Thereafter, the parties filed an agreed motion for turnover relief, and the District Court entered the agreed order of turnover on May 5, 2020. Although the motion for judgment and new trial remains pending before the District Court, the undersigned will nonetheless make recommendations on the referred motions for fees for the District Court's consideration and will, by separate order, schedule a status conference to address the motion to appoint a receiver and how it is affected by the entry of the turnover order.

## II.  Analysis

The Court should grant Plaintiffs' motion for attorney's fees in part. The Court has discretion to award Plaintiffs their reasonable fees as the prevailing parties in this suit, and the requested award of fees incurred through the award of final judgment in this case, as modified in Plaintiffs' Reply [#182], is reasonable. However, Plaintiffs' request for fees associated with any post-judgment motions or a future appeal before the Fifth Circuit should be denied. Nothing in this report and recommendation prevents Plaintiffs from filing a supplemental motion for fees associated with these additional litigation expenses at a later date.

**A.    The Court should award Plaintiffs their reasonable fees incurred through the award of final judgment.**

Plaintiffs bring their motion for fees pursuant to Texas Business and Commerce Code § 24.013 and Texas Civil Practice and Remedies Code § 31.002(e). In their response to Plaintiffs' motion, Defendants concede that Plaintiffs may recover their reasonable attorneys' fees but object to the amount of fees requested. The undersigned agrees that Plaintiffs may recover reasonable attorney's fees under both of the Texas statutory provisions cited in their motion.

Section 24.013 of the Texas Business and Commerce Code provides that in any fraudulent transfer proceeding under TUFTA, "the court may award costs and reasonable attorney's fees as are equitable and just." Plaintiffs prevailed on their claims arising under

5

TUFTA at trial, and the jury found that Hughes made a fraudulent transfer of PPI's assets with the actual intent to defraud for her personal benefit sufficient to pierce the corporate veil under TUFTA.  *See* Tex. Bus. & Comm. Code § 24.005.  The District Court's final judgment reflects these findings.  The District Court has broad discretion to award Plaintiffs their reasonable fees under Section 24.013 of the Texas Business and Commerce Code.  *See In re Pace*, 456 B.R. 253, 283 (Bankr. W.D. Tex. 2011) (citing cases awarding fees under TUFTA where the evidence demonstrated egregious conduct on behalf of the defendants, as well as where there was no such evidence).

Section 31.002(e) of the Texas Civil Practice and Remedies Code provides that a judgment creditor "is entitled to recover reasonable costs, including attorney's fees," incurred for the collection of a judgment through a court proceeding.  Texas authorizes the collection of a judgment through a court proceeding when certain requirements are met.  Tex. Civ. Prac. & Rem. Code § 31.002.  "A judgment creditor is entitled to aid from a court . . . if the judgment debtor owns property, including present or future rights to property, that: (1) cannot readily be attached or levied on by ordinary legal process; and (2) is not exempt from attachment, execution, or seizure for the satisfaction of liabilities."  *Id.* at § 31.002(a).  When these requirements are met, the court is authorized to (1) order the turnover of the property to a sheriff or constable, (2) apply the property to the satisfaction of the judgment or (3) appoint a receiver to take possession of the property, sell it, and pay the proceeds to satisfy the judgment.  *Id.* at § 31.002(b).  The statute permits a court to "reach the assets owned and subject to control of a judgment debtor, even if those assets are in hands of a third party."  *Resolution Trust Corp. v. Smith*, 53 F.3d 72, 78 (5th Cir. 1995).  If successful, the judgment creditor who seeks judgment collection pursuant to this statute is entitled to reasonable fees and costs incurred in obtaining the

turnover relief. Tex. Civ. Prac. & Rem. Code § 31.002(e). Again, the record reflects that the District Court entered an Agreed Order of Turnover on May 5, 2020 [#199], in which the Court ordered Hughes, Performance Probiotics, and API to turnover and transfer 100% of the assets of Performance Probiotics and API to Thomas. Plaintiffs are therefore also entitled to recover reasonable fees under Section 31.002(e) of the Texas Civil Practices and Remedies Code.

**B.     Plaintiffs' requested fees, as modified by their reply, are reasonable.**

Plaintiffs' fee request, as modified by their reply, is reasonable. Texas courts, like the Fifth Circuit, generally use the lodestar method for calculating reasonable attorney's fees. *Robinson v. State Farm Fire & Cas. Co.*, 13 F.3d 160, 164 (5th Cir. 1994); *Toshiba Mach. Co., Am. v. SPM Flow Control, Inc.*, 180 S.W.3d 761, 782–83 (Tex. App.—Fort Worth 2005, pet. granted, judgm't vacated w.r.m.); *Guity v. C.C.I. Enters., Co.*, 54 S.W.3d 526, 528 (Tex. App.—Houston [1st Dist.] 2001, no pet.). However, under Texas law, strict reliance on the lodestar method of calculation is not required if the plaintiff can otherwise demonstrate that the fees sought are reasonable. *See e.g.*, *Aquila Southwest Pipeline, Inc. v. Harmony Exploration, Inc.*, 48 S.W.3d 225, 240–41 (Tex. App.—San Antonio 2001, pet. denied).

The first step under the lodestar method is to determine the "lodestar" amount by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). In the second step of the lodestar method, a court considers whether the lodestar figure should be adjusted upward or downward depending on its analysis of additional factors. *Id.* The Texas Supreme Court has identified eight factors to be used by the factfinder to determine the reasonableness of the fees. *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex. 1997). These factors are: (1) the time and labor required, the novelty and difficulty

7

of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing their services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *Id.* at 818. If these factors are accounted for in determining the lodestar amount, they should not be considered when making adjustments. *Guity*, 54 S.W.3d at 529.

Attached to Plaintiffs' motion is the affidavit of Daniel R. Richards, Plaintiffs' lead counsel, stating that his law firm incurred $415,031.24 in fees and expenses through litigating this lawsuit from October 7, 2015 to November 18, 2019 [#174-1 at 1–2]. Attached to the affidavit are billing records to support the fee request [#174-1 at 3–42]. These records demonstrate that Mr. Richards and Clark Willis Richards, both of whom are partners at the law firm of Richards Rodriguez & Skeith LLP, billed Plaintiffs at a rate ranging from $390 to $445 per hour and $370 to $425 per hour, respectively, over the four-year course of this litigation. Daniel J. Riegel, also a partner at the firm, billed from $325 to $380 per hour over the course of the litigation. The paralegal assigned to the case billed at a rate ranging from $140 to $160 per hour. Collectively, the legal team expended 1,236.60 hours litigating this case for a total of $386,350.50 in attorney's fees incurred. Plaintiffs also seek to recover $28,680.74 in expenses, such as attorney travel, shipment costs, and process server fees as part of the fee award. Plaintiffs' motion does not address costs as available under Rule 45(d) and 28 U.S.C. § 1920.

In their response to Plaintiffs' motion, Defendants do not object to the hourly rate of Plaintiffs' attorneys or the amount of time generally expended prosecuting this case. The undersigned therefore concludes Defendants do not dispute that their rates are reasonable for complex civil litigation in San Antonio, Texas for attorneys with the expertise and experience of Plaintiffs' counsel. Instead, Defendants raise only one objection to Plaintiffs' fee request—that Plaintiffs failed to segregate the legal fees incurred on claims where attorney's fees are recoverable versus those claims where fees are not recoverable. Defendants do not identify specific time entries that should have been segregated but instead make the general argument that Plaintiffs should have segregated those time entries attributable to their TUFTA claims, for which they may recover fees, and for those claims on which they did not prevail, namely their Lanham Act claims, which were abandoned at trial.

Defendants are correct that "[i]n order to show the reasonableness and necessity of attorney's fees, [Plaintiffs are] required to show that the fees were incurred . . . on a claim which allows recovery of such fees." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991), *holding modified by Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299 (Tex. 2006). However, the Texas Supreme Court recognizes an exception to this duty to segregate where the "fees rendered are in connection with claims arising out of the same transaction and are so interrelated that their prosecution or defense entails proof or denial of essentially the same facts." *Id.* at 11 (internal quotation and citation omitted). In such instances, the party moving for attorney's fees may recover the entire amount covering all claims. *Id.*

Plaintiffs modified their fee request in their reply [#182] in light of Defendants' segregation argument and identified several time entries that should have been segregated as non-recoverable because the time was expended solely to research and articulate the actual legal

9

theories for their Lanham Act claims, claims which were abandoned at trial and on which they therefore did not prevail. (Reply [#182] at 4–5.) These time entries amount to $5,848.50 of the claimed fees. As to all other time entries, Plaintiffs maintain that further segregation is not required because the facts and evidence underlying all of the claims in this suit, including the Lanham Act claims, are identical. The undersigned finds Plaintiffs' argument to be meritorious, and the Court should enter a fee award in favor of Plaintiffs as modified by their reply.

Plaintiffs prevailed on all of their claims at trial, with the exception of the abandoned Lanham Act claims. This entire lawsuit was filed and litigated with the purpose of collecting the unpaid balance on a state-court judgment under the theory that Defendants misappropriated trade secrets and fraudulently transferred assets to insulate themselves from fulfilling the state-court judgment. Although Plaintiffs ultimately abandoned their Lanham Act claims regarding PPI's trademarks, trade dress, and trade names, the jury relied on the evidence related to the same in finding that Hughes fraudulently transferred PPI's intellectual property for her personal benefit. Accordingly, any evidence developed to support the Lanham Act claims was duplicative of the evidence submitted in support of Plaintiffs' TUTSA claims and for establishing their entitlement to pierce the corporate veil. The only fees subject to segregation are those related to the development of the legal theories underlying the Lanham Act claims themselves. Accordingly, Plaintiffs' requested $386,350.50 in attorney's fees should be reduced by the $5,848.50 identified as attributable solely to development of the Lanham Act claims by Plaintiffs in their reply. The undersigned notes that Defendants have not objected to the reasonableness of any of the expenses associated with this suit (attorney travel time, process server fees, etc.) claimed by Plaintiffs and therefore Plaintiffs should recover all of the $28,680.74 in expenses identified in their motion.

Defendants' response also vaguely refers to several other categories of time entries, aside from those related to the abandoned Lanham Act claims, that should not be recoverable, but Defendants do not develop the bases for these objections. For example, Defendants mention those fees sought by Plaintiffs that pre-date PPI's filing for bankruptcy and the hiring of Thomas as the bankruptcy trustee. Yet Plaintiffs' reply persuasively argues that these pre-bankruptcy efforts to collect the judgment and obtain discovery from Hughes were presented as evidence at trial to demonstrate that Hughes engaged in various legal efforts to avoid answering discovery, all of which was relevant to the fraudulent transfer elements of concealment of the transfer. Defendants' other objections concern those fees incurred responding to Defendants' 12(b)(6) motion, making expert designations, and completing "basic discovery." The legal basis for these objections is unclear. Plaintiffs' response to Defendants' motion to dismiss focused on Pearcy's standing to assert claims under TUTSA (Mtn. to Dismiss Response [#16]). Plaintiffs are entitled to seek fees expended on their successful defense against Defendants' motion to dismiss and collecting and developing their evidence and witnesses for trial.

Nor is there any factual basis for Defendants' objection to recovery for time spent on Plaintiffs' summary judgment briefing in May 2018. Plaintiffs' responses to Defendants' two motions for summary judgment defended all the claims asserted in this suit, including the Lanham Act claims, all of which were based on the same evidence. (Summ. J. Response [#89].) To the extent there was specific research performed solely on the Lanham Act claims, Plaintiffs have identified those time entries and conceded that they should be segregated. Finally, the undersigned is not persuaded by Defendants' reference to fees incurred regarding Defendants' trade secret claims. Again, Defendants do not sufficiently develop the basis for this objection and which time entries they are contesting. The jury ultimately found that the Hughes

11

fraudulently transferred PPI's trade secrets. The evidence surrounding these trade secrets was integral to Plaintiffs' claims under TUTSA regarding Hughes's fraudulent transfers. None of these undeveloped objections to Plaintiffs' time entries should be sustained or considered in fashioning Plaintiffs' fee award.

Finally, those factors set out by the Texas Supreme Court that have not yet been considered in calculating the lodestar also support Plaintiffs' requested fee award. *See Arthur*, 945 S.W.2d at 818. The fees associated with the prosecution of this lawsuit span over four years and involved complex claims, complex facts, and dispositive motions practice. Plaintiffs prevailed on all claims that they pursued at trial. Plaintiffs total fee award should be for $409,182.74 in fees and expenses.

### C.    Post-Trial Motions and Appeal

Plaintiffs also ask the Court to award (1) $100,000.00 for responding to any unsuccessful post-trial motion or motions for judgment as a matter of law or for new trial; and (2) $35,000.00 for representation in the Fifth Circuit Court of Appeals in the event that this case is appealed and the judgment not reversed. Defendants have indeed already filed a post-judgment motion for judgment as a matter of law and for a new trial, and so presumably Plaintiffs have already incurred additional fees. Nevertheless, the District Court should decline to enter these requested fees at this time but permit Plaintiffs to file a second request for fees after the resolution of the post-judgment motion and appeals.

### III.  Conclusion and Recommendation

Having considered Plaintiffs' motion, the response and reply thereto, the record in this case, and the governing law, the undersigned recommends that Plaintiffs' Motion for Award of Attorney's Fees [#174] be **GRANTED IN PART** as set forth herein.

### IV.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file the objections with the Clerk of Court and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 23rd day of June, 2020.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE